Good morning. Carolyn Phillips, appearing on behalf of the petitioner-appellant Michael Dearing. Mr. Dearing has asserted two claims in his habeas petition that are interrelated and center on one issue, and that was his plea of no contest was an involuntary plea based on the fact that the trial court, prior to accepting Mr. Dearing's plea of no contest to the charges, never advised Mr. Dearing as to the maximum possible sentence. Let me just ask you a question. If we determine that trial counsel discussed the relevant sentencing graduates with your client, do you lose this case? No, I don't think so. And why not? Because the law is very clear about this. The Federal law that existed at the time that Mr. Dearing changed his plea required the court to make an inquiry to ensure that Mr. Dearing knew what he was giving up, what his options were in making a plea of no contest. That inquiry was never made. And, in fact, what the court indicated in the record was that Mr. Dearing was looking at 15 years to life plus 6. Could you just step back on that point? Because I heard you to say the Federal law, in effect. This is a State case. That's correct. But this is a State case. That is correct. And so we're looking only at U.S. Supreme Court law and not at Rule 11 or other various Federal procedural safeguards. Is that right? That's correct. However, Rule 11 also reflects the requirement that a court advise a defendant prior to accepting a plea that that plea has been made knowingly, intelligently, and voluntarily. And that requires one specific aspect of the colloquy by the judge. Whether it's in Rule 11 or it's in the State court, the Fifth Amendment and the Fourth Amendment due process clause require that the plea be voluntary, meaning that the defendant be advised of the possible consequences of his plea. So whether it's a Rule 11 case in Federal court or in State case, the obligations still apply. What is the best Supreme Court case to support your argument? Well, there are several, beginning with Boykin v. Alabama, Brady v. United States, and then subsequent Ninth Circuit cases that have interpreted those principles. Let's take, for example, Brady. As I recall in that case, the question was a compelled plea possibly because somebody was promised a lesser amount, correct? Yes. And what is the language in that case that you think would be transferable or the holding that's transferable to here? Well, the one sentence that has been repeated in almost every case following Brady is that a plea of guilty is voluntarily only if it is entered by one fully aware of the direct consequences of his plea. So that may not require the judge to advise the defendant. That goes to my question. But it does require the court to be satisfied that the defendant has been advised by someone that these – what the possible consequences of his plea is. And, therefore, if he had been advised by his counsel, that would be that someone, would that not be? As long – yes. As long as the court was satisfied that that had occurred. This is an unusual circumstance, and I think this is the type of case where the due process clause is even more important, and that is there is no written plea agreement. There – it was an oral plea that was very vague in its terms as it was relayed by the defense counsel. There is only one mention of a possible maximum plea – sorry, possible maximum sentence, and that's 15 years to life plus six. What's interesting also to note is that two hours following Mr. Deering's appearance in court in which he changed his plea, he was evaluated by a mental health officer at the jail where he was housed. And he – the mental health officer made a notation that Mr. Deering had entered a no-contract plea and was looking at 15 plus years. The other important issue is that Mr. Deering, prior to sentencing, raised the question of whether or not his plea was voluntary because he had not had any sleep for three days as he had been on suicide watch. And that question, that colloquy by the court, had never occurred. The court had never asked Mr. Deering if there were any mental health reasons, if he'd been treated for mental health issues. And all those together indicate that Mr. Deering understood that he was looking at a 15 years plus six maximum sentence. I'll reserve – unless there are further questions, I'll reserve the remaining time for rebuttal. Thank you. Thank you. Good morning, Your Honors, and may it please the Court. I'm Mark Johnson from the California Department of Justice representing an appellee in this matter. I don't really have a lot to say that's not elucidated in the briefs except to point out again  Supreme Court precedent that would require a trial judge to inform a defendant of his maximum possible sentence before accepting a guilty plea or a no-contest plea. And so under – this is an ADPA case, of course. And so the district court properly rejected the claim in that basis. How do you distinguish the Ninth Circuit case of Little v. Crawford? Well, in that it's a Ninth Circuit case, and so it's not applicable under the ADPA. And in any event, even if there was such a constitutional requirement, which there isn't, the record demonstrates that the defendant in this case manifestly was not prejudiced. There was an evidentiary hearing held in the state court on this issue, and the state trial court correctly determined that Mr. Deering was in fact apprised of – he knew what the consequences of his plea were, what the charges against him were. Well, when he – the consequences, though, he knew one of the consequences, which was the specific one advised, but did he know the full consequences that the Supreme Court cases speak to in terms of the double sentence? The length of the sentence? Yes. Well, the evidentiary hearing transcripts reveals that his defense attorney did advise him of the length of the sentence, that he was facing, what the charges were, and what the potential length of those charges were if he were to be found guilty. Did he – was there specific testimony by that attorney that he did in fact advise him of those things? He – not at the time that he – he couldn't recall if he did so at the time that the no contest pleas were entered, but he did testify that before that he always advised all of his clients what the consequences of a guilty verdict would be, and that he had discussed this case extensively with his client in this case. Well, he didn't say that last thing, did he? He didn't – he didn't say that he specifically remembered discussing those things with him. He said at some point he did, and if I – even if I'm mistaken about that, and I don't – I think he did say at some point he did discuss what all the charges were and what the possible penalties associated with those charges were. My recollection of – was that he said he usually – always did that, but he couldn't remember were there any things specific about what he advised this client. I believe there's something in the transcript that reflects that, and I could be incorrect about that, but under the totality of the circumstances here, it was certainly reasonable for the state court to determine that he was aware of the consequences of his plea, and particularly in light of the fact that, you know, if he wasn't aware that he faced a possible 82 years to life plus 15, he certainly would have mentioned something about it when he was sentenced to that, and he was not reticent at the sentencing hearing. He was very vocal at the sentencing hearing. If one would have expected – well, wait a minute here. You know, I thought I was, you know, getting 15 to life, and here it's 82 plus 15. What's going on? And so, I mean, as a matter of common sense, it was at least reasonable for the state court to make that determination. But I go back to the main point that it really doesn't matter because there is no clearly established Supreme Court precedent that would have required the trial court to make that advisement in the first place. But he would have to be advised in some fashion either by his attorney or the court, would he not? Yes, and to the extent that he claims that his attorney may not have advised him, that's an entirely different claim, and it's one that was not presented in the state courts, wasn't presented to the district court, and wasn't presented here. If there's nothing further? No. Thank you. Thank you, Your Honors. Did you want to respond? Just one issue. There's been some issues raised about the sentencing itself. And I think if the Court looks at the sentencing transcripts, what is so obvious is that after this, after Mr. Deering is sentenced, there is never a tally of what Mr. Deering is actually sentenced to. I'm having a lot of difficulty hearing you. I'm sorry. At the sentencing hearing, at the conclusion of the hearing, one of the reasons I would suggest that Mr. Deering did not raise any objections is that the sentencing formulations itself I find very confusing. But at the conclusion of the sentencing hearing, there was no tally by the Court of what exactly Mr. Deering had been sentenced to. So if it is the consideration of this Court that Mr. Deering is somehow telling that Mr. Deering did not object at the time of sentencing to his sentence, I would respectively suggest that he didn't understand what he'd been sentenced to, in fact, didn't realize what he'd been sentenced to until after he received his file from his appellate counsel. Are there any other questions? Otherwise, thank you, and submit. Thank you. Thank you. Thank both counsel for your argument this morning. And the case just argued, Deering v. Chavez is submitted.
judges: Hug, Nelson D. W., McKeown